**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  *Plaintiff*,<br><br>  v.<br><br>HOWARD HOLZMACHER, Jr., and<br>NORTH LANDING FIREWOOD &<br>HAULING, INC.,<br><br>  *Defendants*. | Civil Action No. _____ |

**COMPLAINT**

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA") file this Complaint and allege as follows:

**NATURE OF ACTION**

1. This is a civil action against Howard Holzmacher, Jr., ("Holzmacher, Jr.") and North Landing Firewood & Hauling, Inc. ("North Landing") (collectively, "Defendants") pursuant to Section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), for the discharge of pollutants into waters of the United States without authorization by the United States Department of the Army, in violation of Section 301 of the CWA, 33 U.S.C. § 1311.

2. The property that is the subject of this Complaint ("the Site") is located at 3829 North Landing Road, Virginia Beach, Virginia 23456. The Site and the wetlands on the Site are

1

described below. Attached Exhibit 1 and Figure 1 also depict the Site based on an aerial photograph dated February 21, 2021. The Site's boundaries are marked in orange, wetlands within the Site's boundaries are marked in blue hatching, wetlands outside of the Site's boundaries are marked in green hatching, and the centerline of the North Landing River (identified as the Pocaty River, which is a tributary of the North Landing River) is marked in light blue. The portion of the wetlands located within the Site's boundaries are as depicted in the Corps' July 17, 2014 approved jurisdictional delineation for the Site, which is attached as Exhibit 2, and the portion of the wetlands outside of the Site's boundaries are as depicted by the U.S. Fish and Wildlife Service's National Wetlands Inventory.



Figure 1

3.    In this action, Plaintiffs seek to: (1) enjoin the unauthorized discharge of pollutants into waters of the United States from point sources at the Site; (2) require Defendants, at their own expense and at the direction of EPA, to restore and/or mitigate the impacts caused

by the alleged unlawful activities; and (3) require Defendants to pay civil penalties as provided in 33 U.S.C. § 1319(d).

### JURISDICTION, VENUE, NOTICE, AND AUTHORITY

4. This Court has jurisdiction over the subject matter of this action and these parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and CWA Section 309, 33 U.S.C. § 1319(b).

5. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1391 and 1395, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because Defendants conduct business in this District, the subject Site is located in this District, and the violations that constitute the basis of this Complaint occurred in this District.

6. The United States has authority to bring this action on behalf of the EPA Administrator under 28 U.S.C. §§ 516 and 519, and Section 506 of the CWA, 33 U.S.C. § 1366.

7. Pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), the United States has notified the Commonwealth of Virginia of this action.

### DEFENDANTS

8. Defendant Howard H. Holzmacher, Jr., is a private individual who resides and conducts business in the Eastern District of Virginia. Upon information and belief, Mr. Holzmacher, Jr., resides or at one time resided in Virginia Beach, Virginia 23456.

9. Defendant North Landing Firewood & Hauling, Inc. ("North Landing") is a stock corporation incorporated in the Commonwealth of Virginia on December 6, 2011. North Landing's principal place of business is located at 3313 Heffington Dr., Virginia Beach, VA 23456.

10. Mr. Holzmacher, Jr., is the president and director of North Landing. Mr. Holzmacher, Jr., has served as the director of North Landing since its incorporation on December

4

1, 2011. North Landing identified Mr. Holzmacher, Jr., as its president on December 12, 2012. At all times relevant to the Complaint, Mr. Holzmacher, Jr., served as the president and director of North Landing.

11.     At all times relevant to the Complaint, Mr. Holzmacher, Jr., co-owned the Site located at 3829 North Landing Road, Virginia Beach City, Virginia 23456, with his father, Mr. Howard H. Holzmacher, Sr. Mr. Holzmacher, Jr., controlled and operated the Site and performed, controlled, and/or directed the activities relevant to this Complaint that occurred at the Site. Mr. Holzmacher, Jr., additionally acted as an agent of North Landing.

**STATUTORY AND REGULATORY BACKGROUND**

A.  **Clean Water Act General Provisions**

12.     The objective of the Clean Water Act is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

13.     CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant" by any person to navigable waters unless that discharge is authorized by a permit issued under CWA Section 404, 33 U.S.C. § 1344, or by other provisions of the CWA not applicable here. Strict liability applies under CWA Section 301(a), 33 U.S.C. § 1311(a).

14.     Section 404(a) of the CWA, 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, U.S. Army Corps of Engineers ("Corps"), to issue permits for the discharge of dredged and/or fill material into navigable waters at specified disposal sites, after notice and opportunity for public comment.

15.     "Discharge of a pollutant" means, among other things, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

16.　　"Pollutant" means, among other things, dredged spoil, solid waste, garbage, wrecked or discarded equipment, rock, sand, and/or industrial, municipal, and/or agricultural waste. 33 U.S.C. § 1362(6).

17.　　"Fill material" is defined as any material that replaces portions of the waters of the United States with dry land or which changes the bottom elevation of a water body. 40 C.F.R. § 232.2.

18.　　"Navigable waters" means "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

19.　　33 C.F.R. § 328.3(b) and 40 C.F.R. §§ 122.2 and 232.2 define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

20.　　"Point source" means, among other things, "any discernable, confined and discrete conveyance . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

21.　　For the purposes of the CWA, "person" means "an individual, corporation, partnership, [or] association." 33 U.S.C. § 1362(5).

**B.　Clean Water Act Enforcement Provisions**

22.　　Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the EPA Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction and civil penalties, against any person who violates Section 301 of the CWA, 33 U.S.C. § 1311.

23.　　Section 309(d) of the CWA, 33 U.S.C. § 1319(d), subjects any person who violates CWA Section 301, 33 U.S.C. § 1311, to civil penalties.

24. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), establishes civil penalties for violations of the CWA payable to the United States of up to $25,000 per day for each violation. Section 309(d) of the CWA further specifies that in determining the amount of a civil penalty, a court "shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C. § 1319(d).

25. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (Pub. L. No. 101-410), as amended by the Debt Collection Improvement Act of 1996 (Pub. L. No. 104-134, Sec. 31001(s)), and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note), as reflected in the Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, EPA may seek civil penalties of up to $66,712 per day per violation of the CWA for violations occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023.

## GENERAL ALLEGATIONS

26. The real property that is the subject of this Complaint is located at 3829 North Landing Road, Virginia Beach, Virginia 23456, and comprises Tax Parcel ID 14835340330000, as identified by the City of Virginia Beach Real Estate Assessor. It is additionally located at coordinates 36.727689°N, -76.098830°W.

27. Mr. Holzmacher, Jr., became a co-owner of the Site on June 5, 2019. The Site and its pre-impacts condition on February 26, 2017, are depicted below, with the Site's property boundaries marked in orange.



Figure 2

28.     The Site is an approximately 36-acre plot of land. The Site is bordered on the east

by North Landing Road and on the west by a fork of the North Landing River, labeled as the

Pocaty River in Figure 2.

29.     Upon information and belief, at all times relevant to this Complaint, Defendants owned, controlled, and/or operated the Site.

**A.  Aquatic Features Associated with the Site**

30.     The Site contains approximately 28 acres of forested wetlands, which are adjacent to, abut, and have continuous surface connections with a fork of the North Landing River that is known as the Pocaty River.

31.     The North Landing River, including the Pocaty River, is a navigable water within the meaning of the Clean Water Act because it is subject to the ebb and flow of the tide, and has long been identified by the Corps as a traditional navigable water due to past and present usage in interstate commerce.

32.     The wetlands on the Site have a continuous surface connection to the North Landing River because they abut, *i.e.*, physically touch, the Pocaty River.[1]

33.     The wetlands within the Site's boundaries are part of a larger wetland that encompasses areas of the Site and areas outside of the Site's boundaries that abuts the North Landing River.

34.     On April 25, 2013, following an anonymous complaint reported to the Virginia Department of Environmental Quality, the Corps conducted an inspection of the Site and

---

[1] *See, e.g.*, *United States v. Mlaskoch*, No. 10-cv-2669, 2014 WL 1281523, at *17 (D. Minn. Mar. 31, 2014) ("Because the affected wetlands abutted these tributaries, jurisdiction under the CWA is proper."); *United States v. Donovan*, No. 96-484, 2010 WL 3000058, at *4 (D. Del. July 23, 2010) ("A continuous surface connection exists when a wetland physically abuts another regulated body of water.") (citation omitted), *report and recommendation adopted*, 2010 WL 3614647 (D. Del. Sept. 10, 2010), *aff'd*, 661 F.3d 174 (3d Cir. 2011); *United States v. Brace*, No. 1:17-cv-00006, 2019 WL 3778394, at *24 (W.D. Pa. Aug. 12, 2019) (A "continuous surface connection" "may also occur when a wetland physically abuts another regulated body of water") (quoting *Donovan*, *supra*, cleaned up), *aff'd on other grounds*, 1 F.4th 137 (3d Cir. 2021).

identified the presence of wetlands on the Site in accordance with the Corps' 1987 Wetland

Delineation Manual ("Manual").

35.     Wetland identification involves identifying whether three indicators – hydrophytic

vegetation, hydric soil, and wetland hydrology – are present. The Manual explains that the

presence of each of these three factors confirms that a wetland is present. The absence of one of

these factors does not rule out the presence of a wetland.

      a.     Hydrophytic vegetation consists of plant species that occur in areas where soil is saturated either permanently or with sufficient frequence and duration to have a controlling influence on plant populations.

      b.     Hydric soil is soil that is formed under saturated, flooded, or ponded conditions for a long enough duration during the growing season that it becomes anaerobic (lacking oxygen).

      c.     Wetland hydrology encompasses all hydrologic characteristics of areas that are periodically inundated or have soils saturated to the surface at some during the growing season. Characteristics of wetland hydrology include the presence of water having an overriding influence on vegetation and soils due to anaerobic conditions.

36.     On information and belief, sometime between 2006 and 2014, an area of fill was

placed in a portion of the wetlands within the Site's boundaries without authorization. This area

is depicted in Figure 1 as a space within the Site's boundaries without hatching that runs from

the northwest boundary of the Site towards the southern boundary of the Site. Three culverts run

through the fill and are roughly identified in Figure 1 by three narrow fingers of blue hatching

that span the unhatched area.

10

37.     During the April 25, 2013 inspection, the Corps found "positive indicators of wetland hydrology, hydric soils, and hydrophytic vegetation" throughout the Site. Letter from William T. Walker, Chief, Regulatory Branch, U.S. Army Corps of Engineers Norfolk District, to Howard Holzmacher, Sr., (June 13, 2013). Based on the presence of these three indicators, the Corps determined that the Site included wetlands regulated under the CWA, often called "jurisdictional wetlands."

38.     On March 24, 2014, the Corps conducted a second inspection to delineate the upland and jurisdictional wetlands on the Site. As a part of this process, inspectors collected soil samples from five sampling points in accordance with the Manual. Inspectors positively identified the presence of the three wetland indicators at four of the five sampling points throughout the Site.

39.     On July 17, 2014, the Corps issued a letter that delineated the jurisdictional wetlands within the Site's boundaries. The Corps provided the delineation to Mr. Holzmacher, Sr., and it is included as Exhibit 2 to this Complaint.

40.     In the July 17, 2014 delineation, the Corps noted that it found unauthorized fill materials – *i.e.*, materials discharged without a permit – in approximately 1.7 acres of wetlands (depicted below in red in Figure 3), and that the placement of such fill required authorization from the Corps. Exh. 2 at 1. The letter informed Mr. Holzmacher that he could request an administrative appeal of the approved jurisdictional determination. *Id.*

11



Figure 3

41.     The Corps additionally noted in the July 17, 2014 delineation letter that Mr.

Holzmacher, Sr., "agreed to remove the fill materials in a timely manner in order to resolve the

matter." Exh. 2 at 2.

42.     Mr. Holzmacher, Sr., did not remove the fill material as the July17, 2014 delineation letter confirmed he agreed to do.

43.     The Corps also notified EPA of the findings identified in paragraphs 34 to 41.

44.     On September 17, 2015, EPA issued Mr. Holzmacher, Sr., a Unilateral Administrative Order for Compliance. The order explained that the placement of large cut logs, piles of mulched wood chips, tires, and other items in the wetlands within the Site's boundaries without a permit constituted unlawful discharges of dredged and/or fill material to jurisdictional wetlands. The order directed Mr. Holzmacher, Sr., to submit a restoration plan, including actions to remove fill material and to return the Site to pre-disturbance conditions, to EPA for approval.

45.     On July 26, 2022, EPA conducted an inspection of the Site. During the inspection, EPA inspectors observed that fill material was present in an additional approximately 3.15 acres of wetlands throughout the Site, described in more detail below in Paragraphs 49 through 51 and identified in Exhibit 1. Some piles of fill material were approximately 30 feet high and included items such as countertops, logs, stumps, and brush debris, as well as refuse such as old vehicles and broken countertop material. EPA inspectors also documented the discharge of fill material in new areas that were not identified as impacted in the July 17, 2014 delineation letter.

46.     As part of the July 26, 2022 inspection, EPA investigators collected five samples in accordance with the Manual.

      a.     EPA collected sample 1 from an area that was significantly disturbed by mechanized land clearing and the discharge of fill. Nevertheless, sample 1 had hydric soils and hydrophytic vegetation, which indicated that sample 1 was collected from a wetland.

13

b.      EPA collected sample 2 from an area that was significantly disturbed by mechanized land clearing and the discharge of fill. Nevertheless, sample 2 contained hydric soil, wetland hydrology, and hydrophytic vegetation species. The presence of hydric soil and hydrophytic vegetation, as well as the saturation of the soil (a primary indicator of wetland hydrology), indicate that sample 2 was collected from a wetland.

c.      EPA collected sample 3 from an undisturbed portion of the Site as a reference point immediately outside of the impacted area. The sample contained hydric soil, wetland hydrology, and hydrophytic vegetation. These factors indicate that sample 3 was collected from a wetland.

d.      EPA collected sample 4 from an undisturbed portion of the Site as a reference point immediately outside of the impacted area. The sample contained hydric soil, wetland hydrology, and hydrophytic vegetation. The presence of these factors indicate that sample 4 was collected from a wetland.

e.      EPA collected sample 5 from a disturbed area that the Corps' March 24, 2014 delineation identified as a wetland. EPA inspectors found that all three wetland parameters had been significantly disturbed by land clearing and the discharge of fill. Specifically, the sample indicated that the area had been impacted by fill to a depth of at least 26 inches.

47.    EPA determined that the wetlands within the Site's boundaries maintain a continuous surface connection with a fork of the North Landing River because they physically abut it. That portion of the fork is not static and is subject to the ebb and flow of the tide; and the

14

water levels are also impacted by flooding or drought, which impact the River's high water line. The location of the wetlands within the Site's boundaries on February 26, 2017, before the impacts at issue, are depicted below. The Site's boundaries are marked in orange, wetlands within the Site's boundaries are marked in blue hatching, wetlands outside of the Site's boundaries are marked in green hatching, and the centerline of the North Landing River (identified as the Pocaty River, which is a tributary of the North Landing River) is marked in light blue. The portion of the wetlands located within the Site's boundaries are as depicted in the Corps' July 17, 2014 approved jurisdictional delineation for the Site (Exhibit 2), and the portion of the wetlands outside of the Site's boundaries are as depicted by the U.S. Fish and Wildlife Service's National Wetlands Inventory.



Figure 4

48.     The wetlands within the Site's boundaries, marked in blue hatching, extend and

connect north of the Site, as shown by the green hatching in Figure 4, and abut the fork of the

North Landing River. The wetlands within the Site's boundaries abut the same fork of the North

Landing River on the western edge of the Site. Within the Site's boundaries, the wetlands are partially divided by an unauthorized fill area. Three culverts run through the fill.

### B.  Unauthorized Discharges of Pollutants at the Site

49.    Based on aerial imagery, from at least October 2018, Defendants and/or persons acting on their behalf or at their direction began earthmoving activities at the Site including, but not limited to, land-clearing, grubbing, and grading using earthmoving machinery and other equipment, which constitute point sources. Defendants did not obtain a permit to perform these activities, which resulted in the unauthorized discharges of "pollutants" as defined in CWA section 502(6), 33 U.S.C. § 1362(6), including dredged and/or fill material, into approximately 0.33 acres of wetlands labeled as Area A in Exhibit 1. The discharged material remains in place to this day.

50.    Based on aerial imagery, from at least February 2020, Defendants and/or persons acting on their behalf or at their direction undertook additional earthmoving activities at the Site including, but not limited to, land-clearing, grubbing, and grading using earthmoving machinery and other equipment, which constitute point sources. Defendants did not obtain a permit to perform these activities, which resulted in the unauthorized discharges of "pollutants" as defined in CWA section 502(6), 33 U.S.C. § 1362(6), including dredged and/or fill material, into approximately 0.93 acres of wetlands labeled as Area B in Exhibit 1. The discharged material remains in place to this day.

51.    Based on aerial imagery, from at least November 2020, Defendants and/or persons acting on their behalf or at their direction undertook additional activities at the Site including, but not limited to, land-clearing, grubbing, and grading using earthmoving machinery and other equipment, which constitute point sources. Defendants did not obtain a permit to

perform these activities, which resulted in the unauthorized discharges of "pollutants" as defined in CWA section 502(6), 33 U.S.C. § 1362(6), including dredged and/or fill material, into approximately 1.89 acres of wetlands labeled as Area C in Exhibit 1. The discharged material remains in place to this day and, on information and belief, Defendants are expanding the impacted area.

52. Defendants and/or persons acting on their behalf or at the direction of Defendants used mechanized land-clearing and earthmoving equipment, including graders, excavators, loaders, and backhoes – which constitute point sources – to accomplish the discharges described in Paragraphs 49 through 51.

53. On or about January 22, 2024, EPA issued a Unilateral Administrative Order for Compliance to, among others, Defendants Holzmacher, Jr., and North Landing. A copy of the Order is included as Exhibit 3 to this Complaint.

54. The Order required Defendants to:

a. "Submit a detailed Restoration and Mitigation Plan and schedule for implementation ('Restoration Plan') to EPA for review and approval . . . within sixty (60) days of the effective date of this [Order];" and

b. "Implement the Restoration and Mitigation Plan, following EPA's approval of the Plan."

Exh. 3.

55. EPA sent the January 22, 2024, Unilateral Administrative Order for Compliance to, among others, Defendants Holzmacher, Jr., and North Landing via UPS Next Day Air. Defendant North Landing received the order on January 23, 2024.

18

56.     On information and belief, Defendant Howard Holzmacher, Jr., received the order on January 24, 2024. A person named "Brian" signed for Mr. Holzmacher, Jr.'s, copy of the Unilateral Administrative Order for Compliance on January 24, 2024. Mr. Holzmacher, Jr.'s, copy was returned on February 19, 2024, via UPS.

57.     Impacts of Defendants' activities on the Site and its wetlands are depicted below in a photograph dated February 13, 2021. The Site's boundaries are marked in orange, wetlands within the Site's boundaries are marked in blue hatching, wetlands outside of the Site's boundaries are marked in green hatching; the centerline of the North Landing River (identified as the Pocaty River, which is a tributary of the North Landing River) is marked in light blue, and the impacted areas are marked in bright green. The portion of the wetlands located within the Site's boundaries are as depicted in the Corps' July 17, 2014 approved jurisdictional delineation for the Site (Exhibit 2), and the portion of the wetlands outside of the Site's boundaries are as depicted by the U.S. Fish and Wildlife Service's National Wetlands Inventory.

19



Figure 5

58.    Based on aerial imagery, Defendants' clearing, earthmoving, and wetland-filling activities are ongoing.

59.    The dredged and/or fill material Defendants discharged into wetlands within the Site's boundaries remains in place and continues to affect the impacted wetlands.

60. Defendants have not taken corrective action as required by the January 22, 2024 Unilateral Administrative Order for Compliance.

## COUNT – VIOLATION OF THE CLEAN WATER ACT

### (Against All Defendants)

### Clean Water Act Section 301 and 404 Violations

61. Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 60 as if fully set forth within.

62. Each of the Defendants is a "person" within the meaning of CWA Section 502(5), 33 U.S.C. § 1362(5).

63. The impacted wetlands are "waters of the United States," and thus "navigable waters" within the meaning of CWA Section 502(7), 33 U.S.C. § 1362(7).

64. Defendants and/or persons acting on their behalf began discharging dredged and/or fill material to waters of the United States, as relevant here, around 2018.

65. The dredged and/or fill material Defendants discharged includes, among other things, dredged spoil, solid waste, garbage, wrecked or discarded equipment, rock, and/or sand, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

66. Defendants and/or persons acting on their behalf used mechanized land-clearing and earthmoving equipment to discharge pollutants at the Site. This equipment constitutes "point source[s]" as defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

67. The discharges of dredged and/or fill material described above constitute discharges of a pollutant within the meaning of CWA Sections 301 and 502(12), 33 U.S.C. §§ 1311 and 1362(12).

21

68.     Defendants did not obtain a permit from the Corps for the discharges of dredged and/or fill material into waters of the United States at the Site, as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344.

69.     Defendants have violated and continue to violate CWA Section 301(a), 33 U.S.C. § 1311(a), by their unauthorized discharges of pollutants, including dredged and/or fill material, to waters of the United States at the Site.

70.     The unauthorized discharges of pollutants to waters of the United States described above in Paragraphs 49 through 51 constitute multiple violations at the Site, and each day that such material remains in place constitutes a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

71.     Unless enjoined, Defendants' violations will continue.

72.     Due to Defendants' discharges of dredged/and or fill material to waters of the United States without a permit, which discharges are ongoing, Defendants are liable to the United States for injunctive relief and civil penalties.

73.     Under Clean Water Act Section 309(d), 33 U.S.C. § 1319(d), the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, Defendants are liable for a civil penalty of up to $66,712 per day for violating the Clean Water Act.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court order the following relief:

1.     Permanently enjoin Defendants from discharging or causing the discharge of dredged and/or fill material or other pollutants to any waters of the United States, except in compliance with the CWA and any required permit or permits issued pursuant to the CWA;

22

2.      Order Defendants to undertake measures, at Defendants' own expense and at the direction of EPA and/or the Corps to effect complete restoration of the waters of the United States at the Site and/or to conduct on-site and/or off-site mitigation for unauthorized impacts to waters of the United States, as appropriate;

3.      Order Defendants to pay civil penalties, pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), for each day of each violation of CWA Section 301(a), 33 U.S.C. § 1311(a);

4.      Award Plaintiff its costs incurred in this action; and

5.      Grant such other relief as the Court deems just and proper.

Dated: January 17, 2025

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

KATHERINE E. KONSCHNIK
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

JESSICA D. ABER
United States Attorney
Eastern District of Virginia

*/s/ Albert Lin*
David Kaplan, DC Bar No. 423416
Senior Attorney
Albert Lin, Ca. Bar No. 338253
Trial Attorney
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-0997 (Kaplan)
Tel: (202) 514-2741 (Lin)
Fax: (202) 514-8865
david.kaplan@usdoj.gov
albert.lin@usdoj.gov

*/s/ Kent P. Porter*
Kent P. Porter, VSB No. 22853
Supervisory Assistant U.S. Attorney
Office of the United States Attorney
Eastern District of Virginia
101 W. Main Street, Suite 8000
Norfolk, Va. 23510-1671
Tel: (757) 441-6331
Fax: (757) 441-6689
kent.porter@usdoj.gov

OF COUNSEL:

LAUREN ZARRILLO
Assistant Regional Counsel
United States Environmental Protection
Agency Region 3
Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103

*Attorneys for the United States of America*

24