

**REGION 3**

PHILADELPHIA, PA  19103

**VIA UPS OVERNIGHT MAIL**

North Landing Firewood & Hauling, Inc.
Registered Agent: James W. Lam, Esq.
2425 George Mason Drive, Suite 209
Courthouse Commons Building
Virginia Beach, Virginia 23456

Mr. Howard H. Holzmacher, Sr.
3829 North Landing Road
Virginia Beach, Virginia 23456

Mr. Howard H. Holzmacher, Jr.
3829 North Landing Road
Virginia Beach, Virginia 23456
Hhhsr3@gmail.com


Re:    EPA Docket No. CWA-03-2024-0066DW
       ADMINISTRATIVE ORDER FOR COMPLIANCE
       CLEAN WATER ACT VIOLATIONS

Dear Respondent:

Attached is the executed Unilateral Administrative Order for Compliance ("UAO") concerning violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 – 1389.  The United States Environmental Protection Agency ("EPA") is issuing this UAO to Howard H. Holzmacher, Sr., Howard H. Holzmacher, Jr., and North Landing Firewood & Hauling, Inc. (collectively, "Respondents") under the authority of Section 309(a) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1319(a), to address violations at property located at 3829 North Landing Road, Virginia Beach, Virginia 23456 ("Site"), which is owned and operated by the Respondents. The UAO requires the Respondents to submit certain documents to EPA and implement certain activities in order to address violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and comply with Section 404 of the CWA, 33 U.S.C. § 1344.

Specifically, the Order in the UAO requires the Respondents to:

(1)  Submit a detailed Restoration and Mitigation Plan and schedule for implementation ("Restoration Plan") to EPA for review and approval, which addresses site conditions,

within sixty (60) days of the effective date of this UAO;

(2)    Implement the Restoration and Mitigation Plan, following EPA's approval of the Plan;

(3)    Submit a certification to EPA, stating that the work described in the approved Restoration Plan has been completed, no later than twenty (20) calendar days after completion of the restoration activities; and

(4)    Monitor the restored area at the Site for a period of no less than ten (10) years to ensure the objective of restoring impacted aquatic resources.

Please note that the effective date of this UAO is ten calendar days from the date of your receipt of this document.

If you have any questions regarding the UAO, please contact Lauren Zarrillo, Assistant Regional Counsel, at (215) 814-2475 or Zarrillo.Lauren@epa.gov.

Sincerely,

KAREN MELVIN
Digitally signed by KAREN MELVIN
Date: 2024.01.19 11:21:03 -05'00'

Karen Melvin, Director
Enforcement and Compliance Assurance Division
United States Environmental Protection Agency,
Region 3

Enclosure
Executed Administrative Order for Compliance

cc:
Lauren Zarrillo, EPA Region 3 (Zarrillo.Lauren@epa.gov)
Robert George, EPA Region 3 (George.Robert@epa.gov)
David Knepper – USACE, Norfolk District (David.A.Knepper@usace.army.mil)
Jennifer Serafin – USACE, Norfolk District (Jennifer.M.Serafin@usace.army.mil)
Sheri Kattan – VADEQ, Tidewater Regional Office (Sheri.Kattan@deq.virginia.gov)
Gavin Washburn – VADEQ, Tidewater Regional Office (Gavin.Washburn@deq.virginia.gov)

2



**REGION 3**

PHILADELPHIA, PA 19103

| | |
|---|---|
| In The Matter of:<br><br>Howard H. Holzmacher Sr.,<br>Howard H. Holzmacher, Jr., and<br>North Landing Firewood & Hauling, Inc.<br>3829 North Landing Road<br>Virginia Beach, Virginia 23456.<br><br>      Respondents.<br><br>Property Located At:<br><br>3829 North Landing Road<br>Virginia Beach, Virginia 23456. | Proceeding Under Section 309(a) of the Clean Water Act, 33 U.S.C. § 1319(a)<br><br>ADMINISTRATIVE ORDER FOR COMPLIANCE<br><br>U.S. EPA Docket No.  CWA-03-2024-0066DW |

## I.   STATUTORY AUTHORITY

1.  This Administrative Order for Compliance ("Order") is issued under the authority vested in the United States Environmental Protection Agency ("EPA") by Section 309(a) of the Clean Water Act, 33 U.S.C. § 1319(a) ("CWA" or "Act"). The Administrator has delegated this authority to the Regional Administrator of EPA, Region 3, who in turn has re-delegated it to the Director of the Enforcement & Compliance Assurance Division.

## II.   FINDINGS OF FACT and CONCLUSIONS OF LAW

2.  Howard H. Holzmacher, Sr., Howard H. Holzmacher, Jr., and North Landing Firewood & Hauling, Inc., a corporation incorporated in the Commonwealth of Virginia, collectively ("Respondents") are each a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

3.    Respondents Howard H. Holzmacher, Sr., and Howard H. Holzmacher, Jr. are the owners and/or operators of the property located at 3829 North Landing Road, Virginia Beach, Virginia 23456, parcel identification number 14835340330000 ("the Site"), depicted in Exhibit A (Site Map).

4.    Respondent North Landing Firewood & Hauling, Inc., owned and operated by Howard H. Holzmacher, Jr., operates the disposal site for logs, stumps, wood chips, or brush debris, and firewood service at the Site, depicted in Exhibit A (Site Map).

5.    The North Landing River is the westernmost boundary of the Site. The North Landing River is a traditional navigable water. The Site contains wetlands that abut and have a continuous surface connection to the North Landing River. The North Landing River and the abutting wetlands on the Site are "waters of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

6.    Previously, on September 17, 2015, Respondent Howard H. Holzmacher, Sr., had been ordered by EPA, through an Administrative Order on Consent to provide a Restoration Plan for prior unauthorized discharges of fill on the Site.

7.    The discharge of fill and/or dredged material into or onto waters of the United States without a permit issued by the United States Army Corps of Engineers ("Corps") pursuant to Section 404 of the CWA, 33 U.S.C. § 1344, is a violation of the CWA.

8.    Prior to June 5, 2019, Mr. Howard H. Holzmacher, Sr., as sole owner of the Site, operated equipment that discharged or caused to be discharged dredged and/or fill material to waters of the United States at the Site without authorization from the Corps.

9.    On or around June 5, 2019, Howard H. Holzmacher, Sr. and Howard H. Holzmacher, Jr. became co-owners of the Site.

10.    Since at least June 5, 2019, Respondents, or persons acting on behalf of Respondents, have, on an ongoing basis, operated equipment that discharged dredged and/or fill material to waters of the United States at the Site without authorization from the Corps.

11.    EPA conducted an inspection on July 26, 2022, and observed that Respondents had discharged fill material to approximately 3.4 acres of waters of the United States at the Site. The approximate location of the discharge is shown in Exhibit A (Site Map).

12.    On May 2, 2023, EPA issued Respondents a Notice of Potential Violations and Opportunity to Confer (NOPVOC).

13. Section 301(a) of the CWA, 33 U.S.C. §1311(a), prohibits any person from discharging dredged and/or fill material from a point source to "waters of the United States" except in compliance with a permit issued by the Corps under Section 404 of the CWA, 33 U.S.C. § 1344.

14. The term "fill material," within the meaning of 40 C.F.R. § 232.2, includes any pollutant which replaces portions of "waters of the United States" with dry land or which changes the bottom elevation of a water body for any purpose.

15. The term "discharge of fill material," within the meaning of 40 C.F.R. § 232.2, includes "[p]lacement of fill that is necessary for the construction of any structure or infrastructure in a water of the United States."

16. The term "discharge of dredged material," within the meaning of 40 C.F.R. § 232.2, includes the "addition of dredged material into, including redeposit of dredged material other than incidental fallback within, the waters of the United States."

17. The equipment referenced in Paragraphs 8 and 10, above, from which the dredged and/or fill material was discharged to waters of the United States on the Site constitute a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

18. The adding of fill and/or dredged material since at least June 5, 2019, to present, into waters of the United States on the Site constitutes a "discharge of a pollutant" within the meaning of Sections 502(16) and 502(12) of the CWA, 33 U.S.C. § 1362(16) and § 1362(12).

19. At no time during the discharge of dredged and/or fill material into waters of the United States at the Site did the Respondents have a permit from the Corps as required by Section 404 of the CWA, 33 U.S.C. § 1344.

20. Respondents have violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging dredged and/or fill material to the "waters of the United States" from a point source without authorization.

### III.    ORDER FOR COMPLIANCE

Therefore, the Respondents are hereby ORDERED, pursuant to Section 309(a) of the CWA, 33 U.S.C. § 1319(a), to do the following:

21. Cease and desist all unpermitted discharges to waters of the United States at the Site, including filling, clearing, and grading except in compliance with a CWA Section 404 or 402 permit or in accordance with the plans submitted and approved pursuant to this Order.

22.    Restoration and Mitigation Plan.  Within sixty (60) calendar days of the Effective Date of this Order, Respondents shall submit via email to EPA a detailed "Restoration and Mitigation Plan" developed by a qualified professional trained in wetland and stream restoration work to return the Site to compliance with the CWA. The Restoration and Mitigation Plan shall include the following elements. Failure to include any of the following elements will be considered a violation of this order:

   a.   A written description of the actions to be taken to remove the dredged and fill material and restore the waters of the United States on the Site, specifically, the waters of the United States described above, and depicted in Exhibit A (Site Map).  Restoration shall be to the approximate pre-disturbance grade and conditions, including the identification of an upland disposal area where the material removed from the wetlands will be placed.  The written description must:

      i.   Account for permanent stabilization of the Site.

      ii.  Include a planting plan to revegetate the wetlands once the fill material is removed that utilizes species native to Virginia and includes a seed mix and woody vegetation. It should account for decompaction of the soil and the potential need for soil amendments, if necessary, to allow for successful reestablishment of a hydrophytic vegetative community.

      iii. Incorporate measurable, quantitative performance criteria consistent with pre-disturbance conditions utilizing an appropriate reference.

      iv.  Include provisions for post-restoration monitoring with an adaptive management plan designed to document the progress toward attainment of the performance criteria for a period of time consistent with the monitoring period.

23.    After review of the Restoration and Mitigation Plan, EPA will either: a) approve the Plan, in whole or in part; b) approve the Plan upon specified conditions; c) modify the Plan to correct any deficiencies; d) disapprove the Plan, in whole or in part; or e) any combination of the above.

24.    If EPA disapproves all or part of the Restoration and Mitigation Plan, Respondent shall, within thirty (30) calendar days of receipt of EPA's disapproval, correct the deficiencies and resubmit the Plan for approval.  If the Plan is not approved as provided in this Order, EPA retains the right to order restoration in accordance with a plan to be developed by EPA.

25.    Following EPA's approval of the Restoration and Mitigation Plan (either with or without conditions or modifications required by EPA), Respondents shall implement the restoration work identified in the Plan.  All restoration work shall be completed within the schedule of work in the Restoration and Mitigation Plan to be approved by EPA.

26. No later than twenty (20) calendar days after the completion of the restoration activities, Respondents shall submit a certification to EPA as set forth in Paragraph 33, certifying that the work described in the approved Restoration and Mitigation Plan has been completed.

27. Respondents shall monitor the restored area at the Site for a period of no less than ten (10) years to ensure the objective of restoring impacted aquatic resources.  Respondents shall conduct monitoring events at the Site twice per year, once in the spring and once in the fall, and submit to EPA a monitoring report at the address listed in Paragraph 32, including the language set forth in Paragraph 33, by December 31st of the monitoring year.

28. EPA shall review each monitoring report to determine whether the restoration efforts undertaken by Respondents pursuant to Paragraph 22 have been successful.  Responsibility to complete the required restoration as set forth in the approved Restoration Plan will not be considered fulfilled until Respondents have demonstrated project success and have received written verification of that success from EPA.

29. Once all conditions in the Restoration and Mitigation Plan have been met and written verification has been provided, EPA shall terminate the Order.

30. Respondents shall not discharge any dredged or fill material into the waters of the United States except in compliance with a permit issued pursuant to Section 404 of the CWA, or in accordance with the plans submitted and approved pursuant to this Order.

31. Respondent's failure to complete the work in a manner consistent with this Order and the approved Restoration and Mitigation Plan shall be deemed a violation of this Order.

32. All correspondence related to this Order shall be sent electronically to:

> Robert George
> Enforcement Inspector
> Enforcement & Compliance Assurance Division
> United States Environmental Protection Agency, Region 3
> george.robert@epa.gov
>
> and
>
> Lauren Zarrillo
> Assistant Regional Counsel
> Office of Regional Counsel
> United States Environmental Protection Agency, Region 3
> zarrillo.lauren@epa.gov

## IV.    GENERAL PROVISIONS

33.    The following certification must accompany each submission by the Respondents pursuant to this Order and must be signed by a Representative of the Respondents authorized to sign on behalf of the Respondents:

> *I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based upon my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.*

> Signed:

> Title:

> Date:

34.    Respondents' compliance with the terms of this Order shall not relieve Respondents of their obligation to comply with all applicable provisions of the CWA or any other Federal, Commonwealth or local law or regulation. Issuance of this Order is not an election by EPA to forego any civil or criminal action otherwise authorized by the Clean Water Act. EPA reserves the right to seek any remedy available under the law that it deems appropriate to the violations described herein. Compliance with this Order shall not be a defense to any action commenced pursuant to such authorities.

35.    Violation of the terms of this Order may result in further EPA enforcement action including, but not limited to, imposition of administrative penalties, pursuant to 33 U.S.C. § 1319(g) as modified by the Debt Collection Procedures Act of 1996 and the subsequent Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, and/or initiation of judicial proceedings that allow for civil penalties of up to $66,712 per day for each day of violation that occurs, and/or for the criminal sanctions of imprisonment and fines of up to $25,000 per day, 33 U.S.C. § 1319(c).

36.    The provisions of this Order shall apply to and be binding upon the Respondents and their officers, directors, employees, contractors, agents, trustees, successors and assigns of Respondents.

37.    Respondents shall allow EPA personnel on the Site for the purpose of inspecting work performed pursuant to this Order upon reasonable notice.  EPA reserves all existing inspection

6

authority otherwise available to EPA pursuant to Section 308 of the CWA, 33 U.S.C. § 1318, or pursuant to any other statute or law.

38.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 162-21(b)(2), performance of the activities in Section 3 (Order for Compliance), Paragraphs 21-32 is restitution, remediation, or required to come into compliance with the law.

## V.    OPPORTUNITY TO CONFER

39.    Respondents are invited to confer with the Agency about the findings and conclusions reflected in this Order including the terms and conditions contained herein.  Respondents' request for a conference must be confirmed in writing via e-mail within ten (10) calendar days of receipt of this Order.  Any conference between Respondents and EPA must occur no later than 20 calendar days after receipt of this Order.  If the requested conference is held, this Order shall become effective ten (10) calendar days after the conference is held.  If Respondents do not request a meeting within ten (10) calendar days of receipt of this Order, Respondents waive its right to a conference, and this Order shall become effective ten (10) calendar days from its receipt.  Any request for a conference, or other inquiries concerning this Order, should be made in writing to: Robert George at george.robert@epa.gov.  Respondents' attorney may contact Lauren Zarrillo, Assistant Regional Counsel, at zarrillo.lauren@epa.gov.

## VI.    JUDICIAL REVIEW

40.    Respondent may seek federal judicial review of this Compliance Order, issued under Section 309 of the CWA, 33 U.S.C. § 1319, pursuant to Chapter 7 of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.  Section 706, which is set forth at https://uscode.house.gov/view.xhtml?req=granuleid:USC-prelim-title5-section706&num=0&edition=prelim, states the scope of such review.

## VII.    EFFECTIVE DATE

41.    The effective date of this Order shall be ten (10) calendar days from the date of receipt of this Order, or, if a conference is requested per Section IV above, this Order shall become effective ten (10) calendar days after the conference is held.

## VIII.    NOTICE OF INTENT TO COMPLY

42.    Within (10) calendar days of the effective date of this Order, Respondent shall submit to EPA via e-mail a Notice of Intent to Comply with the Order.  The Notice shall be submitted to:

Robert George
Enforcement Inspector

7

Enforcement & Compliance Assurance Division
United States Environmental Protection Agency, Region 3
george.robert@epa.gov

SO ORDERED:


ON BEHALF OF THE COMPLAINANT, U.S. ENVIRONMENTAL PROTECTION AGENCY:




Date:     _____          KAREN   Digitally signed by
                                                MELVIN   KAREN MELVIN
                                                         Date: 2024.01.19
                                                         11:07:06 -05'00'

                                                Karen Melvin, Director
                                                [*digitally signed and dated*]
                                                Enforcement and Compliance Assurance Division
                                                U.S. EPA, Region 3

9

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION 3**
**Philadelphia, Pennsylvania 19103**

| | | |
|---|---|---|
| **In the Matter of:** | : | |
| | : | |
| **Howard H. Holzmacher, Sr.,** | : | **U.S. EPA Docket No. CWA-03-2024-0066DW** |
| **Howard H. Holzmacher, Jr., and** | : | |
| **North Landing Firewood & Hauling, Inc.** | : | **ADMINISTRATIVE ORDER FOR COMPLIANCE** |
| **3829 North Landing Road,** | : | **PURSUANT TO SECTION 309(a) OF THE CLEAN** |
| **Virginia Beach, Virginia 23456.** | : | **WATER ACT, 33 U.S.C. § 1319(a).** |
| **Respondents.** | : | |
| | : | |
| **Property Located At:** | : | |
| | : | |
| **3829 North Landing Road,** | : | |
| **Virginia Beach, Virginia 23456.** | : | |
| | : | |

**CERTIFICATE OF SERVICE**

I certify that the foregoing Administrative Order was filed with the EPA Region 3 Regional Hearing Clerk on the date that has been electronically stamped on the Administrative Order. I further certify that on the date set forth below, I caused to be served a true and correct copy of the foregoing Administrative Order to each of the following persons, in the manner specified below, at the following addresses:

Copies served via UPS and email to:

**Howard H. Holzmacher, Sr.,**
**Howard H. Holzmacher, Jr., and**
**North Landing Firewood & Hauling, Inc.**
**3829 North Landing Road,**
**Virginia Beach, Virginia 23456.**
**Respondents.**

Copies served via email to:

Lauren J. Zarrillo
Assistant Regional Counsel
U.S. EPA, Region 3
Zarrillo.Lauren@epa.gov

Robert George
Enforcement Inspector
U.S. EPA, Region 3
George.Robert@epa.gov

BEVIN ESPOSITO  Digitally signed by BEVIN ESPOSITO
Date: 2024.01.22 07:24:53 -05'00'
_____

[*Digital Signature and Date*]
Regional Hearing Clerk
U.S. Environmental Protection Agency,
Region 3



## Legend

🔴 Soil Borings

⬜ Parcels

🟩 Impacted Wetlands (~3.4 acres)



Coordinate System: WGS 1984 Web Mercator Auxiliary Sphere